GARFIELD BAKER, et al.,

     Plaintiffs,

v.

WARNER/CHAPPELL MUSIC, INC., et al.,

     Defendants.

_____/

## OMNIBUS ORDER ON MOTIONS TO DISMISS THIRD AMENDED COMPLAINT

Plaintiffs Garfield Baker and Byron Smith, while proceeding *pro se*, filed a Third Amended Complaint [ECF No. 182] after the Court dismissed without prejudice [ECF No. 175] their Second Amended Complaint [ECF No. 120]. The parties previously consented to full magistrate-judge jurisdiction [ECF Nos. 135; 140], and Plaintiffs are now represented by counsel.

The Crane Defendants (i.e., Robert Crane; Pandisc Music Corp.; and Whooping Crane Music, Inc.) move to dismiss the Third Amended Complaint with prejudice. [ECF No. 188]. Plaintiffs, through newly-acquired counsel, filed an opposition response. [ECF No. 199]. The Crane Defendants filed a reply [ECF No. 203].

The Warner Defendants (i.e., Warner/Chappell Music, Inc. and Artist Publishing Group, LLC) also move to dismiss with prejudice the Third Amended Complaint. [ECF

No. 189]. Plaintiffs filed a separate opposition response to that motion. [ECF No. 199].

The Warner Defendants also filed a reply. [ECF No. 206].

For the reasons outlined below, the Court **denies in part and grants in part** the

motions to dismiss. Specifically, the Court **dismisses with prejudice** Count IV for

declaratory judgment and Count III for vicarious copyright infringement as against the

Warner Defendants only. The remaining claims, however, will remain intact.

## I.     Procedural and Factual Background

### A.     *Prior Related Lawsuits*[1]

This lawsuit is but one of several concerning the rights to certain musical works.

The prior lawsuits include: (1) *Pandisc Music Corp., et al., v. Warner/Chappell, et al.*, No.

09-CV-20505 (S.D. Fla. 2009) (Moreno, J. presiding); (2) *Pandisc Music Corp., et al., v. Tony*

*Butler, et al.*, Civil Case No. 10-59481 CA 40 in the Eleventh Judicial Circuit for Miami

Dade County; and (3) *Garfield Baker, et al., v. Warner/Chappell, et al.*, Civil Case No. 14-

019088 in the Eleventh Circuit for Miami-Dade County.

The 2009 federal case resulted in a Mediation Settlement Agreement (the

"MSA"). [ECF No. 188-1]. The MSA addressed 11 musical works that are also at issue in

this case: (1) *Don't Stop My Love*; (2) *Can't Get Enough*; (3) *All Night*; (4) *They're Playing*

---

[1]     Within this section, some of the facts and procedural history are excerpted from United States District Judge Joan A. Lenard's December 11, 2015 Omnibus Order on Defendants' motions for more definitive statements. [ECF No. 119]. Judge Lenard presided over this case before she transferred it to me following the parties' full consent to my jurisdiction. [ECF Nos. 135; 140–41]

*Our Song*; (5) *It's Automatic*; [2] (6) *Don't Stop the Rock*; (7) *How Can We Be Wrong*; (8) *Stay in Here with Me*; (9) *I'll Be All You Ever Need*; (10) *Will We Ever Learn*; and (11) *24/7*. [ECF No. 188-1, ¶¶ 7–8]. The parties agreed, among other things, that Plaintiffs would each receive certain royalties for the first nine songs listed above, no royalties for *Will We Ever Learn*, and certain royalties for Garfield only for *24/7*. [ECF No. 188-1, ¶¶ 7–8].

The MSA also contained some releases. Pertinent here, paragraph 4 of the MSA states, "Garfield/Byron waives, releases and forever discharges all claims against Pandisc, WC and Crane for all royalties or other claim under their agreement except with regarding to obligations under this agreement." [ECF No. 188-1, ¶ 4]. Additionally, paragraph 13 of the MSA states, "Byron and Garfield waive, release and forever discharge any and all claims against: Pandisc, Whooping Crane and its officers and Crane." [ECF No. 188-1, ¶ 13].

Due to the MSA, Judge Moreno dismissed the 2009 federal case with prejudice, agreeing to retain jurisdiction to enforce the MSA if the parties filed the MSA on the record before a certain time. The parties did not do this. Nonetheless, the parties filed motions to compel enforcement of the MSA.

All parties, except Plaintiffs, later withdrew their motions to compel after entering into an amendment to the MSA. Plaintiffs were not signatories to the

---

[2] Plaintiffs have spelled this work's name as either "Its Automatic" or "It's Automatic." For this Order, the Court will use the grammatically-correct version of the name.

amendment, a situation which has since grown into a hot-button issue between the parties. The amendment purported to not affect Plaintiffs' rights under the MSA, but it did remove two works -- *Playing Our Song* and *Stay in Love with Me* -- from the MSA's section that controls Plaintiffs' right to royalties.

Judge Moreno ultimately denied all motions to enforce the MSA, finding that he lacked subject matter jurisdiction to resolve the parties' post-settlement contractual disputes.

**B.** *Procedural History of this Case*

On January 27, 2014, four years after Judge Moreno entered his final order, Plaintiffs filed this action. The original complaint alleged six counts: (1) direct copyright infringement, (2) contributory copyright infringement, (3) vicarious copyright infringement, (3) tortious interference with a business expectancy, (4) civil conspiracy, (5) constructive trust, and (6) accounting. [ECF No. 1]. Apart from the 11 works set forth in the MSA, Plaintiffs' new case also implicated three works not named in the MSA: *All My Love*, *Catch 22*, and *Get Some*.

Judge Lenard dismissed the original Complaint without prejudice because it was an impermissible shotgun pleading. [ECF No. 89]. In response, Plaintiffs amended their Complaint. [ECF No. 90]. But Judge Lenard dismissed this Amended Complaint as well because it still constituted impermissible shotgun pleading. [ECF No. 119]. Plaintiffs then filed their Second Amended Complaint. [ECF No. 120].

After that, the parties consented to full magistrate-judge jurisdiction, and Judge Lenard referred the case to me. [ECF Nos. 135; 140–41].

## C.     *The Order Dismissing the Second Amended Complaint Without Prejudice*

On September 28, 2016, the Court dismissed Plaintiffs' Second Amended Complaint. [ECF No. 175]. The four non-copyright counts were dismissed with prejudice because Plaintiffs completely failed to address the grounds for dismissal of those claims. [ECF No. 175, pp. 13–15]. Regarding the counts for direct, contributory, and vicarious copyright infringement, the Court instructed Plaintiffs to file more definite statements in a Third Amended Complaint, thus dismissing those counts without prejudice. [ECF No. 175, pp. 10–12].

The basis for the dismissal without prejudice was that Plaintiffs had impermissibly lumped all Defendants into each count, without alleging individual wrongdoing. [ECF No. 175, pp. 10–11]. The Court noted that before it had this case on consent, "Judge Lenard [had] previously warned Plaintiffs about the improper practice of asserting multiple claims against multiple defendants in the same count, without specifying who did what." [ECF No. 175, p. 11 (citing ECF No. 89, pp. 5–6)]. Yet "[d]espite this specific warning, Plaintiffs continue[d] to broadly assert allegations against multiple defendants by contending that 'Defendants' engaged in certain conduct." [ECF No. 175, p. 11].

The Court warned that "[b]ecause a third amended complaint will be Plaintiffs'

fourth attempt to properly plead their complaint, the Plaintiffs are unlikely to be afforded any additional flexibility." [ECF No. 175, p. 10]. Therefore, the Court predicted that it would "likely dismiss with prejudice a third amended complaint which does not adequately explain what each defendant allegedly did in connection with each count." [ECF No. 175, pp. 10–11].

### D. *Allegations in the Third Amended Complaint*

Between 1984 and 1987, Plaintiffs and Defendant Robert Butler[3] co-authored and composed fourteen musical works. [ECF No. 182, ¶ 20]. The works are titled (1) *Don't Stop the Rock*, (2) *It's Automatic*, (3) *They're Playing Our Song*, (4) *Stay in Love with Me*, (5) *All Night* , (6) *I'll Be All You Ever Need*, (7) *How Can We Be Wrong?*, (8) *Don't Stop My Love*, (9) *All My Love*, (10) *Catch 22*, (11) *24/7*,[4] (12) *Get Some*, (13) *Will We Ever Learn*, and (14) *Can't Get Enough*. [ECF No. 182, ¶ 20]. Under the stage name "Freestyle," Plaintiffs performed (and continue to perform) these musical works, some of which reached the top of the music charts and were covered and performed by prominent artists. [ECF No. 182, ¶¶ 23–25].

Plaintiffs allege that they are the "copyright owners" or "co-owners" of the

---

[3]     The Court entered a default against Butler and his company, Defendant 321 Music LLC, but held off on entering a final judgment until the claims against the other Defendants were resolved.

[4]     Plaintiffs set forth various spellings for this work as well. But in this instance, the Court will not pick a preferred spelling, but simply flags the point that the variations refer to a single musical work.

works at issue. [ECF No. 182, ¶¶ 1, 4, 18, 26, 30, 52, 58]. Plaintiffs also allege that they have several rights under the Copyright Act relative to the works, including the right to reproduce, distribute copies of, publicly perform, and authorize the licensing of the works. [ECF No. 182, ¶ 5].

Plaintiffs charge Pandisc and Butler of entering into "unlawful agreement(s)" between 1981 and 1991 to obtain exclusive rights to the musical works. [ECF No. 182, ¶ 28]. Pandisc and Whooping Crane then registered claims of copyright for *Don't Stop the Rock* -- which the allegations suggest was the most popular musical work out of the bunch -- and exploited that work and others through various licensing agreements. [ECF No. 182, ¶¶ 29–40]. Plaintiffs received no revenues from this "exploitation of the musical compositions." [ECF No. 182, ¶ 41].

Plaintiffs likewise accuse Butler and 321 Music of "unlawfully" licensing some of the musical works after Butler also filed copyright registrations claiming exclusive ownership of those works. [ECF No. 182, ¶¶ 42–50]. The alleged impropriety includes a 2008 licensing agreement involving 321 Music, Warner/Chappell, and Artist Publishing Group for the rights to certain works Plaintiffs "co-owned." [ECF No. 182, ¶¶ 51–57]. According to Plaintiffs, the works included: (1) *Don't Stop the Rock,* (2) *Don't Stop My Love,* (3) *Drop the Boom,* (4) *Get Some,* (5) *How Can We Be Wrong,* (6) *I'll Be All You Ever Need,* (7) *It's Automatic,* (8) *Muevelo,* (9) *They're Playing Our Song,* (10) *Twenty Four Seven,* (11) *Stay in Love with Me,* and (12) *Will We Ever Learn.* This list includes 2 works not

included among the original 14 works Plaintiffs co-authored and composed -- *Drop the Boom* and *Muevelo*. [ECF No. 182, ¶¶ 20, 52]. Plaintiffs further claim that they are "the owners" of the copyrights in *They're Playing Our Song*, *Stay in Love with Me*, *Don't Stop the Rock*, and *It's Automatic*. [ECF No. 182, ¶ 58].

In Count I, Plaintiffs bring a claim for direct copyright infringement against Pandisc only. [ECF No. 182, ¶¶ 60–75]. Plaintiffs allege that they are "the owners of the copyrights in the musical compositions including '*Don't Stop the Rock*'" and are entitled to enforce their rights under the Copyright Act. [ECF No. 182, ¶¶ 61–62]. They also allege that "[f]or each of the Musical works, Plaintiff holds the copyright registration certificate from the United States Copyright Office or applied for a registration certificate." [ECF No. 182, ¶ 63]. Plaintiffs then state that since 2011, Pandisc has been infringing the copyright in *Don't Stop the Rock*, *They're Playing Our Song*, *Stay in Love with Me*, and *It's Automatic* in various ways, such as using it in a Cadbury television commercial and in a "phonorecord" named *Trinere and Friends*. [ECF No. 182, ¶¶ 64–71].

In Count II, Plaintiffs bring a claim for contributory copyright infringement against Whooping Crane, 321 Music, Artist Publishing Group, and Warner/Chappell Music. [ECF No. 182, ¶ 76]. Plaintiffs allege that they "are the owners of the copyrights in the musical compositions including They're Playing Our Song, Stay in Love with Me, Don't Stop the Rock and [It's] Automatic," and are entitled to enforce their rights under the Copyright Act. [ECF No. 182, ¶¶ 77–78 (internal quotations omitted)]. Plaintiffs also

repeat that "[f]or each of the Musical works, Plaintiff holds the copyright registration certificate from the United States Copyright Office or applied for a registration certificate." [ECF No. 182, ¶ 79].

Plaintiffs then allege that since 2011, Whooping Crane intentionally contributed to, induced, or caused Pandisc to infringe Plaintiffs' copyright in *Don't Stop the Rock* by fraudulently licensing that work to Pandisc for use in the Cadbury commercial. [ECF No. 182, ¶ 80]. Plaintiffs also allege that, since 2011, Whooping Crane intentionally contributed to, induced, or caused Pandisc to infringe Plaintiffs' copyright in *They're Playing Our Song* and *Stay in Love with Me* by fraudulently licensing those works to Pandisc for use in the phonorecord *Trinere and Friends*. [ECF No. 182, ¶ 81].

Plaintiffs then allege that, since 2011, 321 Music also intentionally contributed to, induced, or caused Pandisc to infringe Plaintiffs' copyright in *Don't Stop the Rock* and *It's Automatic* by "misrepresenting" that Pandisc was the sole owner of those works and by fraudulently authorizing the use of those works in *Trinere and Friends*. [ECF No. 182, ¶ 82].

Similarly, Plaintiffs allege that, since 2011, Warner/Chappell and Artist Publishing Group "knowingly and systematically" contributed to, induced, or caused Pandisc to infringe Plaintiffs' copyright in *Don't Stop the Rock* and *It's Automatic* by fraudulently licensing those works to Pandisc for use in *Trinere and Friends*. [ECF No. 182, ¶ 83]. Additionally, Plaintiffs allege that Warner/Chappell and Artist

Publishing Group granted an "exclusive publishing administration license" in *They're Playing Our Song* and *Stay in Love with Me* to Whooping Crane without Plaintiffs' permission. [ECF No. 182, ¶¶ 84–85].

In Count III, Plaintiffs bring a claim for vicarious copyright infringement, seemingly against five parties only: Whooping Crane, 321 Music, Butler, Artist Publishing Group, and Warner/Chappell Music. [ECF No. 182, ¶ 97]. But later allegations in the same count also implicate and seek relief from a *sixth* party: Robert Crane. [ECF No. 182, ¶¶ 101–03, 110–12].

Plaintiffs allege that they "are the owners of the copyrights in the musical compositions including *Don't Stop the Rock* and *It's Automatic*," and are entitled to enforce their rights under the Copyright Act. [ECF No. 182, ¶¶ 98–99 (internal quotations omitted)]. Plaintiffs also allege that "[f]or each of the works, Plaintiff holds the copyright registration certificate from the United States Copyright Office or applied for a registration certificate." [ECF No. 182, ¶ 100].

Plaintiffs then allege that Robert Crane and Whooping Crane "have the right and ability to control third parties['] fraudulent use of Plaintiffs' copyrighted musical compositions, including but not limited to, Don't Stop the Rock and It's Automatic." [ECF No. 182, ¶ 101 (internal quotations omitted)]. Plaintiffs also allege that Robert Crane and Whooping Crane have a financial interest in fraudulently using those works, and that they profit from the fraudulent use of those works by third party licensors.

[ECF No. 182, ¶ 102]. Plaintiffs then ask the Court to enjoin Robert Crane and Whooping Crane to prevent further harm. [ECF No. 182, ¶ 103]. Plaintiffs go on to set forth similar, separate allegations against Butler and 321 Music, and against Artist Publishing Group and Warner/Chappell. [ECF No. 182, ¶¶ 104–09].

In Count IV, Plaintiffs bring a declaratory judgment claim against Pandisc, Whooping Crane, 321 Music, and Warner/Chappell. [ECF No. 182, ¶ 114]. Plaintiffs have not alleged this cause of action before. Under this count, Plaintiffs ask the Court to, among other things, declare the MSA and its amendment invalid because they contain "fraud by concealment." [ECF No. 182, ¶ 116]. They also ask the Court to declare "that the final judgment in the 2010 Case should be vacated or otherwise set aside." [ECF No. 182, ¶ 117].

The same day that they filed the Third Amended Complaint, Plaintiffs also filed a Notice of Filing of Plaintiffs' Copyright Registrations. [ECF No. 183]. The docket text for the notice of filing specifically references the Third Amended Complaint. [ECF No. 183]. This, coupled with the fact that the parties treat this filing in their memoranda as an exhibit to the Third Amended Complaint, leads the Court to also treat the notice of filing as an exhibit to the Third Amended Complaint, even though it was filed as a separate document.

Despite the title of the Notice (which uses the words "copyright registrations"), none of the documents are actual Certificates of Registration. Rather, the notice of filing

includes **search results** from the U.S. Copyright Office's website for 13 works: *All Night, Can't Get Enough, Catch 22, Don't Stop my Love, Don't Stop the Rock, How Can we be Wrong?, It's Automatic, Stay in Love with Me, They're Playing Our Song, Twenty Four/Seven, All My Love, Get Some,* and *I'll Be all You Ever Need.* [ECF No. 183]. Plaintiffs do not include search results for *Will We Ever Learn, Drop the Boom,* or *Muevelo.*

Most search results purport to show completed copyright registrations. [ECF No. 183, pp. 4–14]. Two of the results, however, show copyright application summaries for *All My Love* and *Get Some.* [ECF No. 183, pp. 15–18]. And two other results (the second result appearing for *Don't Stop the Rock* and the only result that appears for *I'll Be All You Ever Need*) seem to also show the pending applications, but with less detail. [ECF No. 183, pp. 19–20].

The results list Plaintiffs as the co-authors of several works: *All Night, Can't Get Enough, Catch 22, Don't Stop my Love, Don't Stop the Rock, How Can we be Wrong?, It's Automatic, Stay in Love with Me, They're Playing Our Song, Twenty Four/Seven, All My Love,* and *Get Some.* [ECF No. 183, pp. 4–18]. But the "Copyright Claimant" is listed as either "Music Specialists Publishing," "Music Specialist Publishing," "Music Specialist Inc." or "321 Music, LLC." [ECF No. 183, pp. 4–18]. The result for *I'll Be All You Ever Need* does not include the authorship or claimant information. [ECF No. 183, p. 20].

Whether spelled "Music Specialists" or "Music Specialist," the name likely refers to one company: Music Specialist Publishing. The Court mentions that name through

the affidavit of Sherman Nealy, the owner of Music Specialist Inc. [ECF No. 212-1].

Plaintiffs' notice of filing also mentions Nealy in several places -- as a coauthor for *All my Love* and *Get Some*. [ECF No. 183, pp. 15, 17].

Nealy provided the affidavit in support of his and Music Specialist Inc.'s motion to intervene in this lawsuit to assert their alleged copyright rights over the subject works and other works. [ECF No. 212].[5] Nealy affirms in his affidavit that he is the sole owner of Music Specialist Inc., which is affiliated with Music Specialist Publishing. [ECF No. 212-1, p. 1]. According to Nealy, the companies developed, recorded, and published several of the works at issue in this case and "engaged" Plaintiffs as artists under their professional name, Freestyle. [ECF No. 212-1, p. 2]. Nealy further avers that his companies "have been the owner, exclusive publisher and administrator of copyrights" for the works, and that his companies never assigned to Plaintiffs or any Defendants in this case the rights to those works. [ECF No. 212-1, pp. 2–3].

These purported facts are not mentioned in the Third Amended Complaint, however. At most, in one paragraph within the general allegations, Plaintiffs state by way of background that the works at issue "were first recorded and exclusively published and distributed for sale by Music Specialists Inc. and Jam Packed between 1984 and 1987." [ECF No. 183, ¶ 21].

---

[5]     The motion to intervene remains pending before the Court. A ruling will soon be issued.

## II.     Standard

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must take all well-pleaded facts in the plaintiff's complaint and all reasonable inferences drawn from those facts as true. *Jackson v. Okaloosa Cty., Fla.*, 21 F.3d 1531, 1534 (11th Cir. 1994). "A pleading must contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). Although detailed factual allegations are not always necessary to prevent dismissal of a complaint, the allegations must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

A complaint must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 (explaining that the Rule 8(a)(2) pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Nor can a complaint rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (alteration in original)).

The Supreme Court has emphasized that "[t]o survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570); *see also Am.*

*Dental Assoc. v. Cigna Corp.*, 605 F.3d 1283, 1288–90 (11th Cir. 2010). "[C]onclusory allegations, unwarranted deductions of fact, or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002).

"When considering a motion to dismiss, all facts set forth in the plaintiff's complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.'" *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (quoting *GSW, Inc. v. Long Cty.*, 999 F.2d 1508, 1510 (11th Cir. 1993)).

While the courts are required to accept as true all allegations contained in the complaint, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678. "Dismissal pursuant to Rule 12(b)(6) is not appropriate 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Magluta v. Samples*, 375 F.3d 1269, 1273 (11th Cir. 2004) (quoting *Conley*, 355 U.S. at 45–46).

Generally, "*pro se* pleadings are held to a less strict standard than pleadings filed by lawyers and thus are construed liberally." *Alba v. Montford*, 517 F.3d 1249, 1252 (11th Cir. 2008). But this liberal construction "does not give a court license to serve as de facto counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action." *GJR Invs., Inc. v. Cty. of Escambia*, 132 F.3d 1359, 1369 (11th Cir. 1998) (citation

omitted), *overruled on other grounds* by *Iqbal*, 556 U.S. 662.

## III.  Analysis

### A.  *The Crane Defendants' Motion to Dismiss*

#### i.  Claims Against Robert Crane

The Crane Defendants argue that the Court should dismiss Robert Crane from the case because Plaintiffs allege no claims against him. [ECF No. 188, p. 4]. Plaintiffs do not address this argument in their response. The Court could thus dismiss Robert Crane from the case by default, but the Court declines to do because the Crane Defendants' position is contradicted by the plain text of the Third Amended Complaint.

Although Plaintiffs failed to name Robert Crane in the introductory paragraph within each copyright count that states against whom each count is, several paragraphs within Count III (vicarious copyright infringement) do make it clear that Plaintiffs are seeking relief against Robert Crane. Specifically, Plaintiffs name Robert Crane in several paragraphs that ascribe wrongdoing to him, seek to enjoin him, and seek damages from him. [ECF No. 182, ¶¶ 101–03, 110–12].

Accordingly, the motion to dismiss as to Robert Crane is **denied**.

#### ii.  Plaintiffs' Ownership of the Copyrights and Standing to Sue

The Crane Defendants argue that Plaintiffs lack standing to bring any copyright infringement claim because Plaintiffs do not own the copyright in the 14 musical works

at issue,[6] and therefore, lack standing to sue. [ECF No. 188, pp. 4–6]. To support their argument, the Crane Defendants point to the notice of filing Plaintiffs "filed as exhibits to or in conjunction with" the Third Amended Complaint. [ECF Nos. 183; 188, p. 5]. The Crane Defendants argue that the notice of filing shows that Plaintiffs "are not the copyright claimant and therefore lack standing." [ECF No. 188, p. 5].

In response, Plaintiffs do not dispute that they are not copyright claimants. But Plaintiffs argue that they nonetheless have standing to sue because they are the "beneficial owners" of the works at issue. [ECF No. 197, p. 4]. Plaintiffs say that they "were not acting under a 'work for hire agreement' and assigned their rights to Music Specialist in exchange for royalties." [ECF No. 197, p. 5]. Lastly, Plaintiffs claim that all the works they listed in the Third Amended Complaint "have been registered and/or currently have applications pending before the US Copyright Office." [ECF No. 197, p. 5].

---

[6] At the beginning of their argument, the Crane Defendants state that the Plaintiffs' copyright infringement counts may apply to only 4 out of the 14 musical works at issue. The Crane Defendants do not explain the basis for their view, although they are probably referring to the fact that only 4 of the 14 works are expressly mentioned by name in the copyright infringement counts. That observation, however, does not account for the general allegations, which are incorporated by reference into the specific claims and do mention *all* works. In addition, the Crane Defendants do not ask for any particular relief as a result of their observation. Therefore, the Crane Defendants' passing comment is, for all practical purposes, a mere aside which does not sufficiently raise a basis for dismissal.

For similar reasons, the Court also rejects the Warner Defendants' argument that the MSA should be given "preclusive effect" based on their view that only four songs are mentioned within the individual counts. [ECF No. 189, p. 6].

In their reply, the Crane Defendants say that this is the first time they have heard Plaintiffs claim to be beneficial owners of the copyrights or that Plaintiffs assigned their rights to Music Specialist. [ECF No. 203, p. 3]. Moreover, the Crane Defendants continue, these allegations are not in the Third Amended Complaint. [ECF No. 203, pp. 3–4]. Nor does the Third Amended Complaint explain what rights, if any, Plaintiffs assigned away and which they kept. [ECF No. 203, p. 4]. Thus, the Crane Defendants argue, this beneficial-ownership theory, asserted for the first time in opposition to a motion to dismiss, should not even be considered by the Court. [ECF No. 203, pp. 4–5].

Plaintiffs are correct that beneficial owners of copyrights have standing to sue for copyright infringement. Section 501(b) of the Copyright Act states that either "[t]he legal **or beneficial owner** of an exclusive right under a copyright is entitled . . . to institute an action for any infringement of that particular right committed while he or she is the owner of it." 17 U.S.C. § 501(b) (emphasis added). A "beneficial owner" is "an author who had parted with legal title to the copyright in exchange for percentage royalties based on sales or license fees." *Smith v. Casey*, 741 F.3d 1236, 1241 (11th Cir. 2014) (internal citations omitted). The Eleventh Circuit, along with other circuit courts, has held that "an author who assigns his legal rights to a work in exchange for royalties from its exploitation has a beneficial interest sufficient for statutory standing under § 501(b)." *Smith*, 741 F.3d at 1241 (collecting cases).

Nonetheless, "[e]ven the beneficial owner of an exclusive right in a copyrighted

work must still demonstrate compliance with the Act's formalities, which require 'preregistration or registration of the copyright claim . . . in accordance with this title.'" *Smith*, 741 F.3d at 1242 (quoting 17 U.S.C. § 411(a)). But that does not mean that the beneficial owners *themselves* must apply for the registration. To the contrary, the Eleventh Circuit has also held that "[n]othing in § 411(a) indicates that a composer [author] who has agreed to assign his legal interest in a composition, along with the right to register it, in exchange for royalties, may not rely on the registration his assignee files." *Id.*

Therefore, regardless of who registered the subject copyrights for the works at issue, if Plaintiffs, as they advance in their response, retained a beneficial ownership interest in the subject works, then they could still have standing to sue for copyright infringement.

But that does not resolve the entire issue because, as the Crane Defendants correctly point out, Plaintiffs cannot amend a complaint through an argument raised in opposition to a motion to dismiss. *See Huls v. Llabona*, 437 F. App'x 830, 832 n. 5 (11th Cir. 2011) (affirming dismissal of complaint filed by *pro se* plaintiff, holding that Court would not consider argument raised for the first time in response to a motion to dismiss, instead of by seeking leave to amend complaint); *see also Watkins v. Six Unknown Broward Sheriff Jail Deputies*, No. 14-62095-CIV, 2015 WL 13203924, at *2 (S.D. Fla. Dec. 2, 2015) (rejecting argument against dismissal of *pro se* complaint, explaining:

"argument is made for the first time in the Plaintiff's response; Plaintiff may not amend his complaint through a response to a motion to dismiss."). Thus, the question becomes whether Plaintiffs sufficiently alleged **in the latest version of their complaint** their ownership in the subject works.

The Court answers that question in the affirmative. Throughout their general allegations, Plaintiffs label themselves as the "copyright owners" or "co-owners" of the works at issue. [ECF No. 182, ¶¶ 1, 4, 18, 26, 30, 52, 58]. Plaintiffs make the same allegations within their individual copyright infringement counts. [ECF No. 182, ¶¶ 61, 77, 98]. Plaintiffs also allege that they have several rights under the Copyright Act relative to the works, including the right to reproduce, distribute copies of, publicly perform, and authorize the licensing of the works. [ECF No. 182, ¶ 5]. They also allege to have a certain percentage "writer's share" and "publisher's share" [ECF No. 182, ¶ 22], which may be liberally interpreted as meaning royalty shares. They also allege to hold copyright registration certificates from the United States Copyright Office or have applied for the certificates. [ECF No. 63, ¶¶ 63, 79, 100]. The Court finds that these allegations are sufficient to allege standing.

It is true that Plaintiffs never specify whether they are "legal" owners or "beneficial" owners of the copyrights at issue within the general allegations and the

infringement counts.[7] A complaint drafted with the aid of counsel would have likely specified Plaintiffs' ownership type, as opposed to making the distinction as an after-the-fact attempt to avoid dismissal. But the Court does not find Plaintiffs' lack of precision fatal. Standing would exist regardless of whether Plaintiffs were legal or beneficial owners. 17 U.S.C. § 501(b). At least at the pleading stage, the Crane Defendants are on sufficient notice of Plaintiffs' position regarding ownership and standing and may proceed accordingly.

To be sure, although Plaintiffs' pleading is obviously not a model for clarity, the standard for dismissal is not perfect precision. Rather, Plaintiffs merely need to state enough factual matter to state a claim that is plausible on its face. *Iqbal*, 556 U.S. at 678. Moreover, before dismissing this case, the Court must be convinced that Plaintiffs can prove no set of facts in support of their claims that would entitle them to relief, *Magluta*, 375 F.3d at 1273, all while interpreting Plaintiffs' *pro se* pleading liberally, *Alba*, 517 F.3d at 1252, and taking everything they say as true, *Jackson*, 21 F.3d at 1534. Based on these standards, the Court is not convinced that dismissal based on a so-called lack-of-standing argument is appropriate.

Lastly, although the notice of filing Plaintiffs submitted along with the Third Amended Complaint seemingly contradicts some of the allegations, the Court does not

---

[7] By contrast, in their declaratory judgment count, Plaintiffs do ask for an interpretation regarding their "beneficial ownership" as co-authors of the works at issue. [ECF No. 182, ¶¶ 135, 152]. But of course, the allegations under the declaratory judgment count are not incorporated into the copyright infringement counts.

find that this warrants dismissal either. For example, to the extent the search results attached to the notice of filing may contradict the allegation that Plaintiffs hold copyright registration certificates (that is, if that allegation means that Plaintiffs are the copyright claimants), that is inconsequential because Plaintiffs have standing to sue regardless of who registers the copyright. *Smith*, 741 F.3d at 1242. Moreover, the notice of filing does not contain results for all works, so it cannot serve as a basis to dismiss the copyright infringement claims in their entirety.

Therefore, the Court **denies** the motion to dismiss the copyright infringement counts due to lack of standing.

### iii.     *Prior Pleading Deficiency Relative to Four Songs*

The Crane Defendants argue that Plaintiffs have not corrected a certain pleading deficiency vis-à-vis ownership of four songs that plagued their past complaints. According to the Crane Defendants, the Court previously "noted that the Crane Defendants had alleged that the Plaintiffs do not own a copyright regarding four of the songs at issue," which are *I'll Be All You Ever Need*, *All My Love*, *Get Some*, and *Will We Ever Learn*, and yet Plaintiffs have not remedied this problem. [ECF No. 188, p. 7]. In support of this argument, the Crane Defendants then reiterate their argument concerning Plaintiffs not being the copyright claimants. [ECF No. 188, p. 7].

The Court disagrees with the Crane Defendants' pleading deficiency argument. The Court has already rejected the Crane Defendants' position on Plaintiffs' standing,

which forms much of the basis for this argument. Moreover, Plaintiffs allege that they are the "copyright owners" or "co-owners" of the works at issue, which include those four works. [ECF No. 182, ¶¶ 1, 4, 18, 26, 30, 52, 58].

Therefore, the Court **denies** the motion to dismiss the copyright infringement counts based on this purported pleading deficiency.

### iv. *Release of Future Claims Under the MSA*

The Crane Defendants argue that, in the MSA, Plaintiffs released the Crane Defendants from the claims they allege in this case. [ECF No. 188, pp. 7–9]. As a threshold matter, the Crane Defendants first maintain that, although the MSA is not attached to the Third Amended Complaint, the Court should still consider it on a motion to dismiss because it is central to Plaintiffs' claims and its content is undisputed. [ECF No. 188, p. 8]. In their opposition response, Plaintiffs agree that the Court may consider prior settlement agreements. [ECF No. 197, pp. 5]. Therefore, because the parties agree that the MSA is central to Plaintiffs' claims and agree on its authenticity, the Court will consider it in this motion to dismiss. *SFM Holdings, Ltd. v. Banc of Am. Sec., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010).

Moving to the substance of the argument, the Crane Defendants point the Court to paragraph 13 of the MSA, which states that "Byron and Garfield waive, release and forever discharge any and all claims against: Pandisc, Whooping Crane and its officers and Crane." [ECF Nos. 188, p. 9; 188-1, ¶ 13]. The Crane Defendants argue that this

release language is broad enough to include future copyright infringement claims. [ECF No. 188, p. 9 n. 8]. They contend that "[c]ourts have interpreted such language in the context of intellectual property claims to include the release of future claims," but cite to just one decision: *Great Clips, Inc. v. Hair Cuttery of Greater Boston, L.L.C.*, No. CIV.A 08-CV-10959-DP, 2009 WL 458554 (D. Mass. Feb. 18, 2009). [ECF No. 188, p. 9].

"The law is clear that '[p]rinciples governing general contract law apply to interpret settlement agreements.'" *In re Managed Care*, 756 F.3d 1222, 1232 (11th Cir. 2014) (quoting *In re Chira*, 567 F.3d 1307, 1311 (11th Cir. 2009) (interpreting settlement agreement under Florida law)). Under Florida law, a settlement agreement must explicitly state that it covers future conduct to preclude a claim based on that conduct. *Farese v. Scherer*, 297 F. App'x 923, 926 (11th Cir. 2008) ("Not every claim is precluded however, because of the timing of the settlement agreement and that of the alleged wrongful conduct. Florida law allows releases of liability for future negligent conduct, if the release explicitly states that it covers future conduct.").

In this case, neither paragraph 13 nor any other paragraph with similar release language explicitly mentions *future* claims. [ECF No. 188-1, ¶¶ 3, 4, 13]. By contrast, in the one case the Crane Defendants provide, the release applied to "any and all claims that arise **or may arise** from the application and registration of its own respective mark(s) mentioned in this agreement." *Great Clips*, 2009 WL 458554, at *4 (emphasis added). Thus, *Great Clips* is distinguishable from this case because *Great Clips* concerned

a release that "expressly refers to claims that 'may arise' **in the future**." *Id.* at *5 (emphasis added). The Court thus disagrees with the Crane Defendants' interpretation of the release language in the MSA.

Notably, when parties intend releases to reach beyond the present and encompass potential future claims, they will say so and usually in dramatic terms that contemplate potential claims through the very end of the world. The MSA, however, does not do that, dramatically or otherwise. That is not to say, of course, that the parties may not have intended otherwise. But based solely on the language argued to the Court, and at the pleading stage, the release is not enough to dismiss this case.

Therefore, the Court **denies** the motion to dismiss based on the MSA's release.[8]

v.     *Lumping Defendants Together in Single Counts*

The Crane Defendants argue that the Third Amended Complaint "*still* impermissibly lumps the Defendants together in multiple counts." [ECF No. 188, p. 18 (emphasis in original)]. The Crane Defendants argue further that "while the Plaintiffs attempt to state the allegedly actionable conduct of each Defendant, Defendants are consistently lumped into smaller groups and the allegations asserted are vague, confusing and ultimately fail to hone in on that alleged conduct of each Defendant that

---

[8]     Based on this ruling, the Court will not address the myriad collateral attacks Plaintiffs raise against the MSA.

is allegedly actionable." [ECF No. 188, p. 18].[9]

In their opposition response, Plaintiffs say that they properly amended their pleading to satisfy both this Court's prior dismissal Order and the Rules of Civil Procedure, although they do not elaborate further on that sentiment. [ECF No. 197, p. 16]. Plaintiffs then state that, alternatively, the Court should allow Plaintiffs, through their new counsel, to amend their pleading "one final time." [ECF No. 197, p. 16].

The brevity of Plaintiffs' argument on this issue is troubling considering this Court's warning that "Plaintiffs are unlikely to be afforded any additional flexibility" to amend their claims. [ECF No. 175, p. 10]. It almost borders on a concession of the issue with the hope that the Court will grant one final opportunity to replead. That would be false hope given this case's procedural history.

The Court, however, is ultimately not convinced that Plaintiffs' Third Amended Complaint should be dismissed for the same reason the predecessor pleading was dismissed. Plaintiffs' now-defunct Second Amended Complaint had incorporated 119 general allegations into its copyright infringement counts, which then accused all Defendants of engaging in unspecified and undifferentiated infringement activities. [ECF No. 120-1, pp. 1–9]. This Court, like others before it, admonished this pleading strategy. [ECF No. 175, pp. 11–12]; *see, e.g., Magluta*, 256 F.3d at 1284 (condemning 58-

---

[9]     The Crane Defendants also state generally that none of the counts contain a "short and plain statement" as required by Rule 8. [ECF No. 188, p. 18]. But the Crane Defendants provide no specific argument to support this contention; therefore, they did not sufficiently raise this issue as a basis for dismissal.

page complaint that named 14 defendants in each count and noting that "the complaint is replete with allegations that 'the defendants' engaged in certain conduct, making no distinction among the fourteen defendants charged").

The Third Amended Complaint, by contrast, cuts the number of general allegations by virtually half (from 119 to 59). [ECF No. 182, pp. 1–14]. Moreover, under Count I, Plaintiffs sue just one Defendant, Pandisc. [ECF No. 182, p. 14]. In addition, although Plaintiffs sue multiple Defendants under Counts II and III, they allege some specific infringement activities and differentiate between the multiple Defendants (albeit sometimes in smaller groups) in separate allegations. [ECF No. 182, pp. 17–25]. A more-sophisticated and more-nuanced pleading would have differentiated even further, to be sure, and would have provided clearer allegations, but that does not mean that the Third Amended Complaint requires *dismissal.*

Therefore, the Court **denies** the motion to dismiss based on the purported grouping of multiple Defendants in single counts.

### vi.     *Waiver under the MSA*

The Crane Defendants argue that the Plaintiffs waived any copyright infringement claims against them by virtue of the MSA. [ECF No. 188, p. 9]. Specifically, the Crane Defendants contend that "[b]y entering into an agreement with the Defendants which acknowledged the Defendants' right to use the Musical Works in exchange for royalties to the Plaintiffs, the Plaintiffs waived their right to later sue the

Defendants for copyright infringement." [ECF No. 188, p. 10]. Thus, the Crane Defendants conclude, "any claims the Plaintiffs may have are governed by contract law." [ECF No. 188, p. 11].

Judge Lenard has already rejected a similar jurisdictional argument previously raised by Defendants. [ECF No. 119, pp. 9–11]. Defendants had argued that "Plaintiffs' claims are purely contractual and do not sound in copyright; and therefore, this Court lacks jurisdiction." [ECF No. 119, p. 9]. But based on binding Eleventh Circuit precedent involving a factually similar dispute, Judge Lenard rejected this argument. [ECF No. 119, p. 10 (citing *MCA Television Ltd. v. Pub. Interest Corp.*, 171 F.3d 1265, 1269-70 (11th Cir. 1999)].

The Court sees no reason for treating the Crane Defendants' waiver argument differently from the way Judge Lenard treated their jurisdictional argument. Both arguments advance the same central premise: that "any claims the Plaintiffs may have are governed by contract law." [ECF No. 188, p. 11]. But that is not necessarily true. *MCA*, 171 F.3d at 1269-70.

Nor is the Court willing to make a waiver determination on a motion to dismiss. What works belong to whom and what rights were licensed to whom, and whether those licenses were proper or enforceable, are highly contentious, fact-specific issues in this case. Those issues are best resolved on summary judgment or trial. Indeed, the Crane Defendants' Eleventh Circuit case on waiver is a summary judgment case. *See*

*Jacob Maxwell, Inc. v. Veeck*, 110 F.3d 749, 751 (11th Cir. 1997) (concerning appeal after "the district court awarded summary judgment to the [defendant] and ruled that the [defendant] had received an oral nonexclusive license authorizing the use that it made of the copyrighted song, and that the [plaintiff's] remedy, if any, lay in a state court contract action for payment and damages.").

Therefore, the Court **denies** the motion to dismiss based on waiver.[10]

### vii.    *Declaratory Judgment*

The Crane Defendants argue that the Court should dismiss the declaratory judgment count for several reasons. First, they contend that the declaratory judgment count impermissibly seeks to collaterally attack a state court judgment. [ECF No. 188, pp. 13–15]. Second, they argue that the declaratory judgment count improperly seeks a factual determination regarding past conduct. [ECF No. 188, pp. 15–17]. Third, they argue that the claim is repetitive of the copyright infringement claims. [ECF No. 188, p. 17].

Plaintiffs' response does not address the Crane Defendants' arguments and is difficult to follow. Plaintiffs first maintain that they have alleged "substantial" facts showing that the Crane Defendants never owned the subject copyrights or had valid assignments or licenses for those works. [ECF No. 197, pp. 21–22]. Plaintiffs then mention the related 2009 federal case and the 2010 state law case, and conclude that the

---

[10]    Based on this ruling, the Court will not address Plaintiffs' other opposition arguments related to waiver.

"Crane Defendants received a favorable adjudication in the 2010 Case on February 13, 2015 which presents a bona-fide controversy of facts and law of which the Instant Court may take judicial notice[.]" [ECF No. 197, p. 22]. Plaintiffs then contend that "the 2010 State Court action resulting in a Final Judgment granting the Crane Defendants restoration of ownership and exclusive rights in the subject Musical Works is preempted by 17 U.S.C. 201e and 301," which somehow means that "Plaintiffs in the Instant Case remain under the looming continual threat of a copyright infringement action at the hand of the Crane Defendants." [ECF No. 197, pp. 22–23].

Considering Plaintiffs' lack of specific response to the Crane Defendants' meritorious arguments, the Court agrees that the declaratory judgment claim is improper. It is well established that "federal courts are not a forum for appealing state court decisions." *Staley v. Ledbetter*, 837 F.2d 1016, 1018 (11th Cir. 1988). Moreover, "[c]ourts have generally held that dismissal of a claim for declaratory relief is proper when it is apparent on the face of the complaint that the real dispute is a factual one." *Girard v. Am. Sec. Ins. Co.*, No. 16-CV-61335, 2016 WL 4264054, at *2 (S.D. Fla. Aug. 12, 2016) (internal quotations omitted). And to the extent Plaintiffs raise bona fide issues related to the ownership and licensing of the musical works, those issue are duplicative of the infringement claims. *See Eisenberg v. Standard Ins. Co.*, No. 09–80199–CIV, 2009 WL 3667086, at * 3 (S.D. Fla. Oct. 26, 2009) (dismissing count for declaratory relief because the contractual interpretation in the breach of contract claim would resolve the request

for declaratory judgment).

For the same reasons, the Court also declines to exercise jurisdiction to entertain the declaratory judgment action. Even if Plaintiffs had presented a justiciable issue, the Court still has the discretion to decline entering a declaratory judgment. *See Blue Hill Invs., Ltd. v. Silva*, No. 1:15-CV-20733-KMM, 2015 WL 9319394, at *3 (S.D. Fla. Dec. 23, 2015) (declining jurisdiction where state court previously settled the issues for which the declaratory judgment was sought); *see also Trilogy Properties LLC v. SB Hotel Assocs. LLC*, No. 09-21406-CIV, 2010 WL 7411912, at *5 (S.D. Fla. Dec. 23, 2010) ("The Declaratory Judgment Act grants courts copious discretion in deciding whether to entertain a declaratory-judgment claim.").

Accordingly, the Court **dismisses with prejudice** Count IV for declaratory relief.[11]

**B.** *The Warner Defendants' Motion to Dismiss*

    **i.** **Failure to State a Cause of Action for Contributory and Vicarious Infringement**

The Warner Defendants argue that Plaintiffs fail to state a claim for contributory infringement because the Third Amended Complaint is unclear on "what Artist/Warner's 'material contribution' was to any infringing activity or whose

---

[11]    Because of this ruling, the Court will not address the Warner Defendants' duplicative argument that seeks dismissal of Count IV. Nor does the Court need to address whether the fraud allegations within Count IV satisfy Rule 9(b)'s heightened pleading standard. [*See* ECF No. 188, p. 18].

infring activity Artist/Warner purportedly knew about." [ECF No. 189, p. 7]. The Warner Defendants similarly argue that although Plaintiffs provide the "buzz words" for their vicarious infringement count -- i.e., ability to control third parties and receipt of profits -- they allege no supporting facts to state a plausible cause of action. [ECF No. 189, pp. 8–10].

Plaintiffs offer no response in opposition to these arguments. Instead, Plaintiffs spend much time arguing that they should have leave to replead for a final time because their conduct was not willful. [ECF No. 199, pp. 16–20].

The lack of specific response notwithstanding, the Warner Defendants' arguments are only partly well taken. Specifically, the Court finds that Plaintiffs have sufficiently alleged a claim for contributory infringement (Count II), but not for vicarious infringement (Count III).

Beginning with Count II, the Eleventh Circuit explains that "the well-settled test for a contributory infringer [is] one who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another." *Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 845 (11th Cir. 1990). Here, Plaintiffs allege that Warner/Chappell and Artist Publishing Group "knowingly and systematically" contributed to, induced, or caused Pandisc to infringe Plaintiffs'

copyright in *Don't Stop the Rock* and *It's Automatic* by fraudulently licensing[12] those works to Pandisc for use in the phonorecord *Trinere and Friends*. [ECF No. 182, ¶ 83]. Additionally, Plaintiffs allege that Warner/Chappell and Artist Publishing Group granted an "exclusive publishing administration license" in *They're Playing Our Song* and *Stay in Love with Me* to Whooping Crane without Plaintiffs' permission. [ECF No. 182, ¶¶ 84–85]. Whooping Crane, in turn, is accused of fraudulently licensing those two works to Pandisc, also for use in *Trinere and Friends*. [ECF No. 182, ¶ 81]. These allegations state a plausible cause of action for contributory infringement against the Warner Defendants. *See Cable/Home*, 902 F.2d at 845.

Count III, however, is a different story. "[T]o allege a claim for vicarious infringement, a plaintiff must allege that the defendant infringes vicariously by profiting from direct infringement while declining to exercise a right to stop or limit it." *Disney Enters., Inc. v. Hotfile Corp.*, 798 F. Supp. 2d 1303, 1310 (S.D. Fla. 2011). But here, Plaintiffs simply allege that Warner/Chappell and Artist Publishing Group (1) have the

---

[12] The Warner Defendants provide no authority for their statement that licensing songs does not constitute "material contribution," and that the allegations of fraudulent licensing within this count must be plead in accordance with Rule 9(b). [ECF No. 189, p. 8 n. 5]. As such, these grounds for dismissal are not sufficiently raised.

Moreover, the fact that Plaintiffs incorporated by reference their general allegations into their specific counts does not, by itself, violate the Court's prior admonitions. What the Court admonished Plaintiffs for was incorporating by reference too many general allegations while *also* lumping together all Defendants within single counts which did not differentiate their wrongdoing. That past deficiency has already been addressed above, and it does not serve as a basis for dismissal now.

right and ability to control third parties' (unidentified) fraudulent use of the works, (2) have a financial interest in those fraudulent uses, and (3) profit from those fraudulent uses. [ECF No. 182, ¶¶ 107–08]. These unadorned conclusions fall well short of what is required to state a cause of action for vicarious infringement. *Disney Enters.*, 798 F. Supp. 2d at 1310.

Therefore, the Court **dismisses with prejudice** Count III as to the Warner Defendants for failure to state a cause of action, but **denies** their motion to dismiss as to Count II.[13]

**DONE and ORDERED** in Chambers, in Miami, Florida, on September 28, 2017.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
All counsel of record

---

[13] Because the Crane Defendants did not raise this specific argument in their motion to dismiss, the Court retains this count against them.