UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 14-22403-CIV-GOODMAN
[CONSENT]

GARFIELD BAKER, et al.,

    Plaintiffs,

v.

WARNER/CHAPPELL MUSIC, INC., et al.,

    Defendants.

_____/

## ORDER ON MOTION TO INTERVENE

One of the songs at issue in this case, *Don't Stop the Rock*, begins by informing everyone, "There's a party in the house and we'll be rocking tonight."[1] If the party is this lawsuit, then the proposed intervenors are trying to crash it. But some of the invited guests -- albeit unwilling guests, i.e., some Defendants -- ask the Court to keep the proposed intervenors on the street-side of the velvet rope. The Court declines to close the door on the intervenors, but does limit their entry.

To be more specific, Sherman Nealy and Music Specialist, Inc. ("MSI"), who claim to be the legal owners of the works at issue, move to intervene in this action. [ECF No. 212]. The Crane Defendants (Robert Crane; Pandisc Music Corp.; and Whooping

---

[1]     FREESTYLE, *Don't Stop the Rock*, on DON'T STOP THE ROCK (Jam Packed, Hot Productions 1997).

Crane Music, Inc.) and the Warner Defendants (Warner/Chappell Music, Inc. and Artist Publishing Group, LLC) filed opposition responses. [ECF Nos. 222–23]. The proposed intervenors filed replies. [ECF Nos. 228–29]. Plaintiffs Garfield Baker and Byron Smith -- who took the position that they are the beneficial owners and not the legal owners of the works -- have not filed any opposition.

For the reasons outlined below, the Court **grants in part and denies in part** the motion to intervene. The Court finds that the motion to intervene is timely. The Court also allows Nealy and MSI to permissibly intervene. But the Court also finds that the proposed intervenor complaint impermissibly expands the scope of this case. Therefore, by October 23, 2017, Nealy and MSI must file an amended intervenor complaint that is limited to the parties and works already at issue in this case.

**I.     Background**

Between 1984 and 1987, Plaintiffs and Defendant Robert Butler[2] co-authored and composed fourteen musical works. [ECF No. 182, ¶ 20]. The works are titled (1) *Don't Stop the Rock*, (2) *It's Automatic*, (3) *They're Playing Our Song*, (4) *Stay in Love with Me*, (5) *All Night*, (6) *I'll Be All You Ever Need*, (7) *How Can We Be Wrong?*, (8) *Don't Stop My Love*, (9) *All My Love*, (10) *Catch 22*, (11) *24/7*, (12) *Get Some*, (13) *Will We Ever Learn*, and (14) *Can't Get Enough*. [ECF No. 182, ¶ 20]. Plaintiffs allege that the works "were first

---

[2]     The Court entered a default against Butler and his company, Defendant 321 Music LLC, but held off on entering a final judgment until the claims against the other Defendants were resolved. [ECF No. 170].

2

recorded and exclusively published and distributed for sale by Music Specialists Inc. and Jam Packed between 1984 and 1987." [ECF No. 183, ¶ 21]. Under the stage name "Freestyle," Plaintiffs performed these musical works, some of which reached the top of the music charts and were covered and performed by prominent artists. [ECF No. 182, ¶¶ 23–25].

Controversies regarding some of those works resulted in several lawsuits besides this one.³ A 2009 federal case before United States District Judge Federico Moreno resulted in a Mediation Settlement Agreement (the "MSA"), which addressed 11 musical works that are also at issue in this case. [ECF No. 188-1]. Due to the MSA, Judge Moreno dismissed the case with prejudice, agreeing to retain jurisdiction to enforce the MSA only if the parties filed the MSA on the record before a certain time. The parties did not do this, leading Judge Moreno to later deny motions to enforce the MSA.

Four years later, on January 27, 2014, Plaintiffs, acting *pro se*, filed this action. The original complaint alleged six counts: (1) direct copyright infringement, (2) contributory copyright infringement, (3) vicarious copyright infringement, (3) tortious interference with a business expectancy, (4) civil conspiracy, (5) constructive trust, and (6) accounting. [ECF No. 1]. Apart from the 11 works set forth in the MSA, this case also

---

³ *Pandisc Music Corp., et al., v. Warner/Chappell, et al.*, No. 09-CV-20505 (S.D. Fla. 2009) (Moreno, J. presiding); *Pandisc Music Corp., et al., v. Tony Butler, et al.*, Civil Case No. 10-59481 CA 40 in the Eleventh Judicial Circuit for Miami Dade County; and *Garfield Baker, et al., v. Warner/Chappell, et al.*, Civil Case No. 14-019088 in the Eleventh Circuit for Miami-Dade County.

implicated three works not named in the MSA: *All My Love*, *Catch 22*, and *Get Some*.

Judge Lenard dismissed the original Complaint and the Amended Complaint due to several pleading deficiencies. [ECF Nos. 89; 119]. After that, the parties consented to full magistrate-judge jurisdiction, and Judge Lenard referred the case to me. [ECF Nos. 135; 140–41]. Following Plaintiffs' second amended complaint, the Court dismissed with prejudice the four non-copyright infringement counts and dismissed without prejudice the copyright infringement counts. [ECF No. 175].

On November 11, 2016, Plaintiffs, still acting *pro se*, filed the currently-operative third amended complaint. In it, Plaintiffs allege that they are the "copyright owners" or "co-owners" of the works at issue. [ECF No. 182, ¶¶ 1, 4, 18, 26, 30, 52, 58]. But in response to the dismissal motions that followed, Plaintiffs, now with the benefit of counsel, clarified that they are the "beneficial owners" of the works at issue and "assigned their rights to Music Specialist in exchange for royalties." [ECF No. 197, pp. 4–5].

In Count I, Plaintiffs bring a claim for direct copyright infringement against Pandisc only. In Count II, Plaintiffs bring a claim for contributory copyright infringement against Whooping Crane, 321 Music, Artist Publishing Group, and Warner/Chappell Music. In Count III, Plaintiffs bring a claim for vicarious copyright infringement against Whooping Crane, 321 Music, Butler, Artist Publishing Group, Warner/Chappell Music, and Robert Crane. The Court, however, recently dismissed

with prejudice the Warner Defendants from Count III. [ECF No. 230].[4]

As an exhibit to their latest pleading, Plaintiffs filed a Notice of Filing of Plaintiffs' Copyright Registrations. [ECF No. 183]. But despite the title of the notice (which uses the words "copyright registrations"), none of the documents are actual Certificates of Registration. Rather, the notice of filing includes search results from the U.S. Copyright Office's website for 13 works. [ECF No. 183].

The results list Plaintiffs as the co-authors of several works. [ECF No. 183, pp. 4–18]. But the "Copyright Claimant" is listed as either "Music Specialists Publishing," "Music Specialist Publishing," "Music Specialist Inc." or "321 Music, LLC." [ECF No. 183, pp. 4–18]. Plaintiffs' notice of filing also mentions Nealy as a co-author for two works. [ECF No. 183, pp. 15, 17].

On June 8, 2017, Nealy and MSI moved to intervene in this case to assert their rights over the subject works and other works. [ECF No. 212]. Nealy provided an affidavit in support of his motion to intervene in this lawsuit. [ECF No. 212]. The motion to intervene also included a proposed intervenor complaint. [ECF No. 212-2].

Nealy affirms in his affidavit that he is the sole owner of Music Specialist Inc., which is affiliated with Music Specialist Publishing. [ECF No. 212-1, p. 1]. According to Nealy, the companies developed, recorded, and published several of the works at issue

---

[4] Plaintiffs had also brought a declaratory judgment action against Pandisc, Whooping Crane, 321 Music, and Warner/Chappell, but the Court dismissed Count IV with prejudice. [ECF No. 230].

in this case and "engaged" Plaintiffs as artists under their professional name, Freestyle. [ECF No. 212-1, p. 2]. Nealy further avers that his companies "have been the owner, exclusive publisher and administrator of copyrights" for the works, and that his companies never assigned to Plaintiffs or any Defendants in this case the rights to those works. [ECF No. 212-1, pp. 2–3].

## II. Standard

Federal Rule of Civil Procedure 24 provides, in pertinent part:

**(a) Intervention of Right.** On timely motion, the court must permit anyone to intervene who:

\*\*\*

**(2)** claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

**(b) Permissive Intervention.**

**(1) In General.** On timely motion, the court may permit anyone to intervene who:

\*\*\*

**(B)** has a claim or defense that shares with the main action a common question of law or fact.

Fed. R. Civ. P. 24(a)–(b).

**III.     Analysis**

    **A.**    *The Motion to Intervene is Timely.*

Whether intervention is as of right or permissive, Rule 24 requires a "timely motion." Fed. R. Civ. P. 24(a), (b). The Eleventh Circuit instructs courts to look at several factors to determine whether a motion to intervene is timely:

> 1. The length of time during which the would-be intervenor actually knew or reasonably should have known of his interest in the case before he petitioned for leave to intervene[;] 2. The extent of the prejudice that the existing parties to the litigation may suffer as a result of the would-be intervenor's failure to apply for intervention as soon as he actually knew or reasonably should have known of his interest in the case[;] 3. The extent of the prejudice that the would-be intervenor may suffer if his petition for leave to intervene is denied[;] and 4. The existence of unusual circumstances militating either for or against a determination that the application is timely.

*Salvors, Inc. v. Unidentified Wrecked & Abandoned Vessel*, 861 F.3d 1278, 1294 (11th Cir. 2017) (internal quotation omitted). The burden of proving timeliness is on the proposed intervenor. *Chiles v. Thornburgh*, 865 F.2d 1197, 1213 (11th Cir. 1989).

To explain the lengthy delay in moving to intervene in this case, Nealy avers that he has been "incarcerated twenty-five out of the past thirty years." [ECF No. 212-1, p. 1]. He claims that he was in prison when this lawsuit was filed and was not released until July 5, 2015, and that, until recently, he believed this case was resolved. [ECF No. 212, p. 6]. But by "happenstance," Nealy learned in "late 2016" of "his potential interest in this matter." [ECF No. 212, p. 6].

Nealy and MSI then cite financial difficulties for not moving to intervene at that

7

time. Nealy states that after his "release from incarceration, he was financially unable to conclude the lengthy reinstatement process for MSI until early 2017." [ECF No. 212, p. 6]. Nealy also claims that "he was unable to retain counsel for this matter until as recently as April of 2017 to help establish his lawful claim." [ECF No. 212, p. 6].

Nealy and MSI then argue that intervention would not prejudice the existing parties, but actually assist the litigation, by "providing clarity to the overall matter with respect to the chain of succession of the copyrighted works[.]" [ECF No. 212, p. 7]. They also argue that, by contrast, as the true copyright claimants in this case, they would suffer great prejudice if not allowed to intervene. [ECF No. 212, p. 7].

In their opposition response, the Warner Defendants charge Nealy and MSI of being "evasive" as to how they learned of the litigation. [ECF No. 222, p. 4]. The Warner Defendants maintain that, at a minimum, Nealy and MSI knew about this lawsuit in November 2016, as evidenced by a motion Plaintiffs filed at that time saying that Nealy and MSI had informed Plaintiffs of their intention to intervene in this case. [ECF Nos. 178, p. 2; 222, p. 5]. The Warner Defendants argue that the eight-month delay between that time and when Nealy and MSI moved to intervene is inexcusable. [ECF No. 222, p. 5]. In addition, the Warner Defendants suspect that Nealy and MSI may have known about this lawsuit even earlier given their statement that they thought the case had been resolved. [ECF No. 222, pp. 5–6].

Regarding prejudice, the Warner Defendants simply say that "this case has

painstakingly advanced to the stage where the Defendants are awaiting, if their pending motions are successful, final disposition of this matter after years of litigation and expense." [ECF No. 222, p. 6].

In the Crane Defendants' opposition response, they argue that Nealy and MSI were on inquiry or constructive notice for decades that their copyrights had been infringed because they had not received royalties since the 1990s. [ECF No. 223, p. 9]. They then argue that, in the alternative, Nealy and MSI knew about their potential rights at least in June 2008, when Nealy and his attorney had a meeting with Robert Crane and his attorney to discuss the subject copyrights. [ECF No. 223, p. 10].

Elaborating on the meeting, the Crane Defendants explain that although the motion to intervene suggests that Nealy was continuously incarcerated for 25 years, he was not in prison between 2008 and 2011. [ECF No. 223, p. 2 n. 2]. At the front end of that time, in late May or early June 2008, Nealy contacted Robert Crane and told him that Nealy and his counsel, Jonathan Black, had documents proving that they owned the songs at issue in this case. [ECF No. 223, p. 2]. That led to Nealy and his counsel and Crane and his counsel meeting in person on June 9, 2008, and at that meeting, "Nealy asserted that he and his company, Music Specialist, Inc., were the owners of the songs at issue in this lawsuit as well as other songs not at issue in this lawsuit." [ECF No. 223, p. 3]. As evidence of the meeting, the Crane Defendants provide Robert Crane's affidavit and his attorney's affidavit and time records. [ECF Nos. 223-3; 223-4].

The Crane Defendants also maintain that in March 2016, which is 15 months before Nealy and MSI moved to intervene, Nealy hired a different attorney, Frank Salzano,[5] to make a demand of the Crane Defendants regarding the subject songs. [ECF No. 223, p. 4]. The response includes a copy of the demand letter. [ECF No. 223-5].

As to prejudice, the Crane Defendants argue that "[i]n addition to the intervention necessitating additional discovery and broadening the scope of issues before the Court, this lawsuit could very well be nearing its end." [ECF No. 223, p. 4]. The "end" the Crane Defendants contemplated was an order dismissing the case with prejudice, which did not occur. The purported expanded issues include a potential statute of limitations defense applicable to Nealy and MSI only, and the need to address, through additional discovery and experts, Nealy and MSI's additional claims and issues. [ECF No. 223, pp. 10–13]. The Crane Defendants also argue that, by contrast, Nealy and MSI would not be prejudiced if not allowed to intervene because they can pursue independent claims (assuming those claims are viable). [ECF No. 223, pp. 4, 13–14].

In their replies, Nealy and MSI do not challenge the Crane Defendants' additional facts. Nealy and MSI acknowledge that they contacted the Crane Defendants in March 2016 about the subject songs. [ECF No. 229, p. 3]. Nealy and MSI then explain that "[i]t would take another fifteen months for [them] to raise the finances necessary to

---

[5] Salzano now represents Plaintiffs. [ECF No. 192].

reinstate MSI's corporate status[6] and obtain counsel to represent their interests in this action." [ECF No. 229, p. 3]. Moreover, they maintain that the demand letter (which they do not deny having sent) shows their due diligence in trying to amicably resolve the case before moving to intervene. [ECF No. 228, p. 8].

Nealy and MSI also do not contradict that they "first contacted the Crane Defendants in 2008 to assert their rights in the subject songs[.]" [ECF No. 229, p. 4]. But they argue that the nine-year delay between then and when they sought relief in court is inconsequential because "a copyright owner need not challenge every actionable infringement and can defer suit until [the owner] can estimate that litigation is worth the effort." [ECF No. 229, p. 4].

The timeliness question is a close one, but the Court ultimately finds that the motion was timely due to the lack of prejudice to the existing parties if intervention is allowed. Had this case progressed beyond the pleading stage, Nealy and MSI's lengthy delay in moving to intervene would likely have been inexcusable. *See Roberts v. Gordy*, No. 13-24700-CIV, 2015 WL 11201183, at *2 (S.D. Fla. Apr. 14, 2015) (denying as untimely motion to intervene filed one year after the lawsuit began because "numerous depositions have been taken, mountains of discovery served, and dispositive motions filed and fully briefed."). Importantly, although they have the burden of proving timeliness, Nealy and MSI fail to articulate how or why they first learned of their rights

---

[6] There reinstatement apparently included paying 30-years' worth of past dues to revive MSI as an active corporation. [ECF No. 228, p. 8].

in this case in January 2016. That position is questionable given the lack of explanatory detail and considering that they first contacted the Crane Defendants in 2008 to assert their rights over the same works. Moreover, the issue is not simply when Nealy and MSI *actually knew* about their interests in this case, but when they *should have known*. *Salvors*, 861 F.3d at 1294. The Court suspects that Nealy and MSI should have known about their interests in this case much earlier than January 2016 given their prior history with the parties.

In addition, the main excuse Nealy and MSI put forward for their delay -- financial difficulties -- would not carry the day by itself. The Court understands the practical limitations of having to pay past-due corporate fees and developing a war chest before engaging in expensive federal court litigation. But expense alone is not sufficient reason to delay intervening in a case. *See, e.g.*, *United States v. Alisal Water Corp.*, 370 F.3d 915, 923–24 (9th Cir. 2004) ("An applicant's desire to save costs by waiting to intervene until a late stage in litigation is not a valid justification for delay."). As one case colorfully put it, "it seems inequitable to allow a latecomer, who fiddled while Rome burned, to collect a share of the fire insurance." *Banco Popular de Puerto Rico v. Greenblatt*, 964 F.2d 1227, 1234 (1st Cir. 1992).

Still, as the Eleventh Circuit instructs, "[t]imeliness is not a word of exactitude or of precisely measurable dimensions," but one that "must have accommodating flexibility toward both the court and the litigants if it is to be successfully employed to

regulate intervention in the interest of justice." *Georgia v. U.S. Army Corps of Engineers*, 302 F.3d 1242, 1259 (11th Cir. 2002). Accordingly, "the amount of time that may have elapsed since the institution of the action are not to be relied upon[.]" *Meek v. Metro. Dade Cty., Fla.*, 985 F.2d 1471, 1479 (11th Cir. 1993) *abrogated on other grounds in* 495 F.3d 1324 (11th Cir. 2007). Rather, prejudice must be looked at as "the **essence** of the timeliness inquiry[.]" *Id.* (emphasis added).

Despite Nealy and MSI's lengthy delay, intervention at this point would not unduly prejudice the existing parties. The Crane Defendants and Warner Defendants have yet to answer the third amended complaint. There has been no discovery in the case. Indeed, because of the pleading deficiencies that plagued the past three complaints, the case has been protracted in progress. And a large reason that makes up the Crane Defendants' and Warner Defendants' prejudice argument -- i.e. the motions to dismiss that were pending when they made their argument -- is now moot given the Court's recent ruling. [ECF No. 230].

It is true that Nealy and MSI's intervention could raise new issues, defenses, and additional discovery and expert needs, which could weigh against intervention. *See Roberts*, 2015 WL 11201183, at *3 (denying intervention in part because "intervention could raise complicated statute of limitations arguments not applicable to the other plaintiffs" and because intervention would result in "additional experts to prepare separate damage and profit reports[.]"). But the lack of progress in this litigation also

undercuts the potential prejudice that additional work would entail. *C.f. id.* (noting that expert disclosure deadline was less than a month away and that the discovery cutoff was less than three months away).[7]

The potential prejudice to Nealy and MSI of not being allowed to intervene also weighs in favor of intervention. That Nealy and MSI claim to be the legal owners of the works at issue -- a position Plaintiffs have seemingly adopted as well -- could result in some prejudice if they are not allowed to intervene in this case. *See Dellacasa, LLC v. John Moriarty & Assocs. of Fla., Inc.*, No. 07-21659-CIV, 2007 WL 2979865, at *3 (S.D. Fla. Oct. 11, 2007) (finding prejudice if intervention was denied where "[t]he intervenor takes the position that it is the owner of the subject copyrights and seeks declaratory relief as to its ownership rights.").

Lastly, Nealy's incarceration for the better part of the last 30 years is fairly described as unusual circumstances. The Court is no stranger to litigation by inmates, to be sure, so prison is not a complete bar to participating in a lawsuit. But it certainly

---

[7] The Court also disagrees with the Crane Defendants' position that their statute of limitations defense makes the proposed intervention futile. [ECF No. 223, p. 14]. "It is widely recognized that the separate-accrual rule attends the copyright statute of limitations." *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S. Ct. 1962, 1969 (2014). "Under that rule, when a defendant commits successive violations, the statute of limitations runs separately from each violation." *Id.* Relying on *Petrella*, the intervenors contend that they are "entitled to retrospective relief for infringement that occurred in the three years before they filed their complaint." [ECF No. 229, p. 6]. Whether that is true is a factually-intensive determination that is inappropriate for the intervention stage. Thus, although the statute of limitations may later bar some or all of the intervenors' claims, it does not prevent the intervenors from asserting their claims in the first place.

undermines one's ability to do so. So while this factor is not the strongest reason to allow intervention, when coupled with the lack of prejudice to the existing parties, and potential prejudice to Nealy and MSI, it helps tip the scales in Nealy and MSI's favor.

In short, the Court finds that the motion to intervene was timely.

B.   *Nealy and MSI May Permissibly Intervene in this Action.*

To intervene as of right, the intervenor must show that

> (1) his application to intervene is timely; (2) he has an interest relating to the property or transaction which is the subject of the action; (3) he is so situated that disposition of the action, as a practical matter, may impede or impair his ability to protect that interest; and (4) his interest is represented inadequately by the existing parties to the suit.

*Chiles*, 865 F.2d at 1213. By contrast, to permissibly intervene, the intervenor must show that "(1) his application to intervene is timely; and (2) his claim or defense and the main action have a question of law or fact in common." *Id.* [8]

"The 'claim or defense' portion of the rule has been construed liberally, and indeed the Supreme Court has said that it 'plainly dispenses with any requirement that the intervenor shall have a direct personal or pecuniary interest in the subject of the litigation." *In re Estelle*, 516 F.2d 480, 485 (5th Cir. 1975) (quoting *Sec. & Exch. Comm'n v.*

---

[8]   Citing to *U.S. v. Jefferson Cty.*, 720 F.2d 1511, 1516 (11th Cir. 1983), the Warner Defendants misstate the standard for permissive intervention when they say that of-right analysis set forth in *Chiles* "applies whether the intervenor is claiming intervention of right or permissive intervention." [ECF No. 222, p. 1]. That is wrong -- what the Court in *Jefferson County* said was that the **timeliness analysis** (which the Court previously discussed) applies to both intervention types. *See Jefferson Cty.*, 720 F.2d at 1516.

15

*U.S. Realty & Imp. Co.*, 310 U.S. 434, 459 (1940)). The intervening party, however, "must demonstrate more than a general interest in the subject matter of the litigation before intervention should be allowed." *Alexander v. Hall*, 64 F.R.D. 152, 157 (D.S.C. 1974). And when exercising its discretion, a district court "can consider almost any factor rationally relevant but enjoys very broad discretion in granting or denying the motion [to intervene]." *Daggett v. Comm'n on Governmental Ethics & Election Practices*, 172 F.3d 104, 113 (1st Cir. 1999); *see Dellacasa*, 2007 WL 2979865, at *5 (allowing permissive intervention into copyright case because "intervenor's claim of ownership of the subject copyrights is a question of law or fact in common with the main action.").

Here, although the parties spend considerable time arguing the merits of intervention as of right, the Court need not consider those arguments because Nealy and MSI can plainly **permissibly** intervene. Neither the Warner Defendants nor the Crane Defendants challenge the fact that Nealy and MSI's claims share common questions of law and fact with this case. The Warner Defendants do not address that aspect of permissive intervention. And the Crane Defendants, in a bid to convince the Court to nonetheless exercise its discretion to deny intervention, simply reiterate their position that intervention raises some new issues and may necessitate additional discovery, motion practice, etc. [ECF No. 223, p. 15].

The Court, however, will permit Nealy and MSI to intervene in this case. Not only are the legal and factual commonalities undeniable, but the lack of prejudice to the

existing parties also weighs in favor of permissive intervention. *See Mt. Hawley Ins. Co. v. Sandy Lake Props., Inc.*, 425 F.3d 1308, 1312 (11th Cir. 2005) ("Permissive intervention under Fed. R. Civ. Proc. 24(b) is appropriate where a party's claim or defense and the main action have a question of law or fact in common and the intervention will not unduly prejudice or delay the adjudication of the rights of the original parties.").

But as detailed below, the Court will impose **limits** on the scope of the intervention.

C. *The Current Intervenor Complaint Impermissibly Expands the Litigation.*

"[A]n intervenor is admitted to the proceeding as it stands, and in respect of the pending issues, but is not permitted to enlarge those issues or compel an alteration of the nature of the proceeding." *Vinson v. Wash. Gas Light Co.*, 321 U.S. 489 (1944). Thus, "courts have broad authority to limit the ability of intervening parties to expand the scope of a proceeding beyond the issues litigated by the original parties." *Johnson v. Bd. of Regents of Univ. of Ga.*, 263 F.3d 1234, 1269 (11th Cir. 2001). That authority applies regardless of whether intervention is as of right or permissive. *See Southern v. Plumb Tools, A Div. of O'Ames Corp.*, 696 F.2d 1321, 1323 (11th Cir. 1983) ("imposing certain conditions on either type of intervention, of right or permissive, poses no problem in the federal courts").

As the Warner Defendants explain [ECF No. 222, p. 7], apart from the copyright infringement claims and declaratory action, the proposed intervenor complaint adds

17

additional claims for unauthorized fixation and trafficking in sound recordings, fraud on the court, constructive trust, and accounting. [ECF No. 212-2, pp. 57–64]. The Court previously dismissed with prejudice Plaintiffs' constructive trust and accounting claims. [ECF No. 175]. In addition, Nealy and MSI add claims against Atlantic Recording Corporation, [ECF No. 212-2, pp. 32, 54, 57, 61], a party also previously dismissed from this case. [ECF No. 67]. Moreover, Nealy and MSI assert claims over works not at issue in this case. [ECF No. 212-2, ¶ 25 (listing 29 works)].

Therefore, by October 23, 2017, Nealy and MSI must file an amended intervenor complaint that is limited to the parties and works at issue.

**DONE and ORDERED** in Chambers, in Miami, Florida, on October 12, 2017.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
All counsel of record