# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
# MIAMI DIVISION

CASE NO. 14-22403-CIV-GOODMAN
[CONSENT]

GARFIELD BAKER, et al.,

    Plaintiffs,

v.

WARNER/CHAPPELL MUSIC, INC., et al.,

    Defendants.

_____/

## ORDER ON *COLORADO RIVER* ABSTENTION MOTION

Defendants Robert Crane, Pandisc Music Corp., and Whooping Crane Music, Inc., referred to here as the "Crane Defendants," move to stay this action pending the resolution of a state court action. [ECF No. 243]. The Crane Defendants invoke the so-called *Colorado River*[1] abstention doctrine and this Court's inherent authority.[2] Plaintiffs Garfield Baker and Byron Smith and Intervenor Plaintiffs Music Specialists, Inc. and Sherman Nealy filed an omnibus opposition response. [ECF No. 252]. The Crane Defendants filed a reply. [ECF No. 262].

For the reasons outlined below, the Court **grants** the abstention motion. This case is **stayed** pending resolution of the state court action titled *Pandisc Music Corp., et al. v.*

---

[1]     *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976).

[2]     Given the Court's abstention, I need not discuss my inherent power to stay cases.

*Butler, et al.*, Case No. 06-07709, filed in the Eleventh Judicial Circuit in and for Miami-Dade County, Florida.

**I.      Background**

This lawsuit is but one of several concerning the rights to certain musical works. The prior lawsuits include: (1) *Pandisc Music Corp., et al. v. Butler, et al.*, Case No. 06-07709, in the Eleventh Judicial Circuit in and for Miami Dade County; (2) *Pandisc Music Corp., et al., v. Warner/Chappell, et al.*, No. 09-CV-20505, in the U.S. District Court for the Southern District of Florida; (3) *Pandisc Music Corp., et al., v. Tony Butler, et al.*, Case No. 10-59481, in the Eleventh Judicial Circuit in and for Miami Dade County; and (4) *Garfield Baker, et al., v. Warner/Chappell, et al.*, Case No. 14-019088 in the Eleventh Circuit in and for Miami-Dade County.[3] The following is a brief history of the parties, their disputes, and the lawsuits they spawned:

In 1983, Nealy founded Music Specialists, a company that engaged several music artists, including Baker and Smith, who performed under the stage name "Freestyle," and Defendant Robert Butler,[4] whose stage name was "Pretty Tony." Between 1984 and

---

[3]     Baker and Smith filed this later state court case, alleging many of the same allegations they brought in this case. The Crane Defendants advise that the state court case has since been stayed pending the resolution of this case. The 2014 state court case will, therefore, not be discussed further.

[4]     The Court entered a default against Butler and his company, Defendant 321 Music LLC, but held off on entering a final judgment until the claims against the other Defendants were resolved. [ECF No. 170].

1987, Baker, Smith, Butler, and Nealy authored or co-authored some or all of the 14 musical works at issue in this case. Music Specialists claims that it was the first party to record, publish, and distribute those works. And in fact, Music Specialists filed the original copyright registrations for many of the songs.

Music Specialists was administratively dissolved in 1986. Around the same time, Music Specialists' founder, Nealy, was incarcerated, and he remained so until 2008. Between 1989 and 1992, the Crane Defendants entered into several licensing agreements with Butler and two of his companies: Captain Productions, Inc. and C-Tan Music. According to the Crane Defendants, the agreements granted Pandisc and Whooping Crane exclusive licensing rights to a plethora of musical works, including the 14 works implicated in this case. The Crane Defendants claim that, before entering into those agreements, Butler had represented that he had acquired all rights to the songs from Music Specialists.

At some point, the Crane Defendants became convinced that Butler, Captain Productions, and C-Tan Music were telling third parties that Pandisc and Whooping Crane did *not* have any licensing rights to the subject works. The Crane Defendants believed these statements to be false and sought to enjoin them. So in 2006, the Crane Defendants sued Butler, Captain Productions, and C-Tan Music in Florida state court, under the lawsuit titled *Pandisc Music Corp., et al. v. Butler, et al.*, Case No. 06-07709. This is the pending state court case for which the Crane Defendants seek an abstention order.

In 2008, Butler, through a newly-created company named 321 Music, entered into a different licensing agreement with Defendants Artist Publishing Group, LLC or Warner/Chappell Music, Inc., or both. The Crane Defendants claim that the 2008 agreement purports to license the same songs that Pandisc and Whooping Crane have exclusive rights over under their earlier agreements with Butler, Captain Productions, and C-Tan. So in 2009, Pandisc and Whooping Crane sued 321 Music, Warner/Chappell Music, Artist Publishing Group, and Atlantic Recording Corporation in federal court, under the case titled *Pandisc Music Corp., et al., v. Warner/Chappell, et al.*, No. 09-CV-20505. Smith and Baker intervened in that case, claiming to be the rightful owners of the musical works' copyrights.

The parties to the 2009 federal case entered into a mediated settlement agreement. The agreement covered, among other things, what royalties Baker and Smith would each receive for the musical works. United States District Judge Federico Moreno dismissed the 2009 federal case with prejudice, agreeing to retain jurisdiction to enforce the agreement if the parties filed the agreement of record by a certain time. The parties did not do so, but nonetheless later moved to compel enforcement of the settlement agreement.

All parties, except Baker and Smith, would come to withdraw their motions to compel after entering into an amendment to the settlement agreement. Baker and Smith were not signatories to the amendment, a situation which has since grown into a hot-

button issue. Judge Moreno ultimately denied all motions to enforce, finding that he lacked subject matter jurisdiction to resolve the post-settlement contractual disputes.

After that, the Crane Defendants supposedly learned that Butler had committed fraud concerning the mediated settlement agreement. So in 2010, Pandisc and Whooping Crane sued Butler and 321 Music for fraud in Florida state court, under the lawsuit titled *Pandisc Music Corp., et al., v. Tony Butler, et al.*, Case No. 10-59481. Pandisc and Whooping Crane obtained judgments in that case against Butler and 321 Music, and the judgments were affirmed on appeal.

In 2014, Baker and Smith, acting *pro se*, filed this action, raising several copyright infringement claims, among others. [ECF No. 1]. Judge Lenard dismissed the original complaint and the amended complaint due to several pleading deficiencies. [ECF Nos. 89; 119]. After that, the parties consented to full magistrate-judge jurisdiction, and Judge Lenard referred the case to me. [ECF Nos. 135; 140–41]. Following Plaintiffs' second amended complaint, the Court dismissed with prejudice the four non-copyright infringement counts and dismissed without prejudice the copyright infringement counts. [ECF No. 175].

In November 2016, Plaintiffs, still acting *pro se*, filed the currently-operative third amended complaint. In the third amended complaint, Plaintiffs allege that they are the "copyright owners" or "co-owners" of the works at issue. [ECF No. 182, ¶¶ 1, 4, 18, 26, 30, 52, 58]. But in response to the dismissal motions that followed, Plaintiffs, now with

5

the benefit of counsel, clarified that they are the "*beneficial* owners" of the works at issue and "assigned their rights to Music Specialist[s] in exchange for royalties." [ECF No. 197, pp. 4–5 (emphasis added)].

In June 2017, Nealy and Music Specialists moved to intervene in this case. [ECF No. 212]. Nealy claimed that he is the sole owner of Music Specialists, which, together with another affiliated company, "have been the owner, exclusive publisher and administrator of copyrights" for the works at issue. [ECF No. 212-1, pp. 2–3]. Nealy also claimed that his companies never assigned the rights to those works.

The Crane Defendants, as well as Warner/Chappell Music and Artist Publishing Group, who are both referred to here as the "Warner Defendants," moved to dismiss the third amended complaint. [ECF Nos. 188–89]. In September 2017, the Court largely denied the motions to dismiss, and the Crane Defendants and the Warner Defendants have since filed their answers. [ECF Nos. 230; 241–42]. The Court also granted Music Specialists and Nealy leave to intervene. [ECF No. 234].

## II. Standard

"Generally, as between state and federal courts, the rule is that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the [f]ederal court having jurisdiction." *Willson v. Bank of Am., N.A.*, 684 F. App'x 897, 899 (11th Cir. 2017) (quoting *Colorado River*, 424 U.S. at 817). Federal courts have a "virtually unflagging" obligation to exercise the jurisdiction given to them. *Id.* (quoting

6

*Colorado River, supra*). So "*Colorado River* abstention is particularly rare" and only proper "when the circumstances are exceptional." *Willson*, 684 F. App'x at 899–90 (quoting *Jackson-Platts v. Gen. Elec. Capital Corp.*, 727 F.3d 1127, 1140 (11th Cir. 2013) and *Noonan S., Inc. v. Cty. of Volusia*, 841 F.2d 380, 382 (11th Cir. 1988)).

Still, the principles behind *Colorado River* abstention "rest on considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Willson*, 684 F. App'x at 899 (quoting *Moorer v. Demopolis Waterworks & Sewer Bd.*, 374 F.3d 994, 997 (11th Cir. 2004)). And the decision to abstain from a case under *Colorado River* rests on the court's discretion. *Willson*, 684 F. App'x at 899.

For abstention to apply, one threshold condition must first be met: that the "federal and state proceedings involve substantially the same parties and substantially the same issues." *Id.* at 900 (quoting *Ambrosia Coal & Const. Co. v. Pages Morales*, 368 F.3d 1320, 1330 (11th Cir. 2004). Then, courts must weigh six factors: (1) what court has assumed jurisdiction over property, (2) the inconvenience of the federal forum, (3) the potential for piecemeal litigation, (4) what court obtained jurisdiction first, (5) whether state or federal law will be applied, and (6) the state court's adequacy in protecting the parties' rights. *Jackson-Platts*, 727 F.3d at 1141.[5] Courts should "apply these factors

---

[5] One recent, unpublished Eleventh Circuit case states that there are two other factors: (7) the vexatious or reactive nature of either the federal or the state litigation and (8) whether there is a federal statute that evinces a policy favoring abstention.

7

flexibly and pragmatically, not mechanically." *Id.*

**III. Analysis**

**A.** *The Threshold Condition of Parallel Proceedings*

For there to be parallel proceedings under *Colorado River*, "[e]xact identity between parties and issues is not required." *Flowers v. Fulton Cty. Sch. Sys.*, 654 F. App'x 396, 399 (11th Cir. 2016); *see Ambrosia Coal*, 368 F.3d at 1329–30 (rejecting argument that "*Colorado River* abstention is permissible only when the relevant federal and state cases share *identical* parties, issues, and requests for relief" as too formalistic and as "fly[ing] in the face of the Supreme Court's clear efforts to fashion a flexible and holistic test for applying for the *Colorado River* abstention principle."). Rather, federal and state actions may be "inextricably intertwined" where they stem from the same conduct. *See Fed USA Franchising, Inc. v. Merille, Inc.*, No. 812CV02416SCBTGW, 2013 WL 12155944, at *3 (M.D. Fla. Feb. 21, 2013) (finding parallel state and federal actions that stemmed from the same conduct, even though they concerned different claims and a different party was added to the federal case).

The Court finds that this case and the 2006 state court litigation are substantively similar. At bottom, both cases address the same core problem -- i.e., the disputed ownership and licensing rights over certain musical works -- and arose from the same

---

*Willson*, 684 F. App'x at 900. The parties, however, did not brief those factors, so the Court will not add them to the analysis. It should be noted, though, that Baker and Smiths' *pro se* filing of this lawsuit at the heel of their unsuccessful attempt to enforce a settlement agreement is arguably reactive.

common nucleus of fact. Stated simply, in the early 80s, Baker, Smith, and Nealy authored or co-authored some songs that Music Specialists and/or its affiliates published and distributed. In the mid-80s, Music Specialists was dissolved, and Nealy went to prison. What happened to the songs and their copyrights then is hotly contested in both suits.

In the late 80s and early 90s, Pandisc and Whooping Crane entered into licensing deals concerning the songs with Butler and two of his companies, who had allegedly obtained the rights to the works from Music Specialists. The Butler parties then supposedly breached those deals, which led to the state court action. Butler also, through a different company, entered into a supposedly competing licensing deal with Warner/Chappell and/or Artist Publishing, leading to the first federal court action, in which Baker and Smith also asserted their rights. The parties settled that case.

Butler and 321 Music then supposedly committed fraud concerning the settlement agreement, leading to a second state court action. Baker and Smith also had their qualms with the settlement agreement and the use of the works in general, and so they filed the present lawsuit, claiming that they own the works and that they never gave up ownership to Pandisc, Whooping Crane, Butler, 321 Music, or anyone else. That position changed when Music Specialists, reinstated by the now-freed Nealy, intervened in this lawsuit and alleged that they are the legal owners of the subject copyrights and that the Crane/Butler licensing deals of the late 80s and early 90s were

9

fraudulent. Baker and Smith now claim to be the beneficial owners of the copyrights, having transferred them to Music Specialists back in the day.

As it is plain to see, the same core issue is in both cases: the ownership over the musical works. And both cases arose from the same set of circumstances. This lawsuit and the state court lawsuit are like different species that evolved from one common ancestor. Like different species, they have differing characteristics. For instance, this lawsuit involves copyright infringement claims, while the state court action involves contract claims. And some of the parties in this case are not parties in the state court action. But lawsuits may still be substantially similar under *Colorado River* even if the claims and parties do not match exactly. *See, e.g., Flowers*, 654 F. App'x at 399.

Therefore, the Court finds that the threshold *Colorado River* condition of parallel lawsuits is met here.

### B. *The First Factor: Jurisdiction over Property*

The Eleventh Circuit has stated that where "the relevant cases are not proceedings *in rem*, neither court has jurisdiction over property, and the first *Colorado River* factor does not favor abstention." *Ambrosia Coal*, 368 F.3d at 1332. The case here is not an *in rem* proceeding, but one for copyright infringement. Therefore, this factor does not weigh in favor of abstention. Although Plaintiffs and Intervenor Plaintiffs suggest that the copyrights in this case may be considered *rem*, they cite no authority for that proposition, and independent research revealed none.

As such, the first *Colorado River* factor does not favor abstention.

### C. *The Second Factor: Inconvenience of the Federal Forum*

The second *Colorado River* factor also does not favor abstention. The Crane Defendants concede that this forum is no less convenient than the state court forum, located but a few blocks away.

### D. *The Third Factor: Avoidance of Piecemeal Litigation*

"The single most important factor" in the *Colorado River* analysis is the avoidance of piecemeal litigation. *Ambrosia Coal*, 368 F.3d at 1329; *see also Moses*, 460 U.S. at 16 (explaining that this factor was "[b]y far the most important factor" in deciding *Colorado River*). But not all duplication of effort or threats of inconsistent determinations warrants abstention. Rather, "as it is properly understood, *Colorado River*'s factor concerning the avoidance of piecemeal litigation does not favor abstention unless the circumstances enveloping those cases will likely lead to piecemeal litigation that is abnormally excessive or deleterious." *Ambrosia Coal*, 368 F.3d at 1333.

The Court finds that this paramount factor weighs in favor of abstention. At bottom, Plaintiffs and Intervenor Plaintiffs allege that they, as beneficial owners and legal owners, respectively, never gave up their rights to the musical works to Butler or 321 Music, both of whom, therefore, could not have lawfully entered into any licensing deals with the Crane Defendants or the Warner Defendants. As shown in the motion for

partial summary judgment pending in the 2006 state court case [ECF No. 263–2],[6] the state court judge will decide the core issue of Butler and 321 Music's ability to enter into licensing deals for the subject works. The state court will also decide whether Music Specialists has rights to those works. And the state court will likewise decide the implication of the fraud judgment against Butler and 321 Music, which concerned their conduct relative to the mediated settlement agreement in the case involving the Warner Defendants.

All of these issues are deeply entrenched in this lawsuit. The possibility that this Court and the state court may come to different conclusions on whether the licensing agreements are lawful will create "piecemeal litigation that is abnormally excessive or deleterious." *Ambrosia Coal*, 368 F.3d at 1333. Indeed, the parties' dispute has *already* led to many lawsuits in federal and state court.

In sum, the Court finds that the third *Colorado River* factor, which is the most important factor to consider, weighs in favor of abstention.

### E.     *The Fourth Factor: The Order of Jurisdiction*

The fourth *Colorado River* factor does not depend on which lawsuit was filed first. Rather, "despite [the] somewhat misleading phrasing in *Colorado River,* this factor 'should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions.'" *Ambrosia Coal*, 368 F.3d

---

[6]     The Court takes judicial notice of this state court filing and the others filed of record in this case. [ECF No. 263].

at 1333 (quoting *Moses*, 460 U.S. at 21).

In this case, the 2006 state court case was filed first *and* has progressed the farthest. Even though the present lawsuit was filed in 2014, it has not advanced much past the pleading stage given Plaintiffs' multiple pleading deficiencies. Moreover, Music Specialists and Nealy intervened in this case only recently, and Defendants have not answered that complaint yet. Therefore, this case is not even at issue. By contrast, the parties have exchanged discovery in the state court case, and there is a pending motion for partial summary judgment.

Thus, the Court finds that the fourth *Colorado River* factor weighs in favor of abstention.

### F. *The Fifth Factor: Whether State or Federal Law Applies*

For the fifth *Colorado River* factor to favor abstention, it is not enough for a district court to conclude that state law applies. *Jackson-Platts*, 727 F.3d at 1143. Rather, "this factor favors abstention only where the applicable state law is particularly complex or best left for state courts to resolve." *Id.*; *see also Noonan*, 841 F.2d at 382 (same).

Here, although the interpretation of the licensing agreements at issue involves state law, they involve breach of contract claims. Federal courts are well equipped to apply breach of contract principles under state law, and they routinely do so.

Therefore, the Court finds that the fifth *Colorado River* factor does not favor abstention.

### G. *The Sixth Factor: Whether the State Court can Protect the Parties' Rights*

Under the sixth *Colorado River* factor, "[t]he fact that both forums are adequate to protect the parties' rights merely renders this factor neutral." *Jackson-Platts*, 727 F.3d at 1143 (quoting *Noonan*, 841 F. 2d at 383). Thus, "[t]his factor will only weigh in favor or against abstention when one of the fora is inadequate to protect a party's rights." *Id.* (quoting *Ambrosia Coal*, 368 F.3d at 1334).

Here, the Court finds that the sixth *Colorado River* doctrine is neutral. Plaintiffs and Intervenor Plaintiffs fail to articulate a persuasive reason why the state court could not adequately protect their interests. Many of their arguments concern whether the state court case and the federal case are parallel, which the Court has addressed already. And although Plaintiffs maintain that they have independent standing to sue for copyright infringement as beneficial owners, they do not explain how that renders the state court forum inadequate to protect their rights.

In short, the Court finds that the sixth and final *Colorado River* doctrine is neutral.

### IV. Conclusion

After carefully balancing the *Colorado River* factors, the Court finds that abstention is appropriate. *See CCB, LLC v. BankTrust*, 438 F. App'x 833, 835 (11th Cir. 2011) ("The district court evaluated the factors identified in *Colorado River* and reasonably determined that the progress of the proceedings in state court, the predominance of state law issues, and the likelihood of piecemeal litigation weighed in

favor of abstaining until the earlier action filed by BankTrust is resolved in state court."). "[A] stay, not a dismissal, is the proper procedural mechanism for a district court to employ when deferring to a parallel state-court proceeding under the *Colorado River* doctrine." *Moorer*, 374 F.3d at 998 (internal quotations omitted).

Therefore, this case is **stayed** pending resolution of the state court action titled *Pandisc Music Corp., et al. v. Butler, et al.*, Case No. 06-07709, filed in the Eleventh Judicial Circuit in and for Miami-Dade County, Florida.

**DONE and ORDERED** in Chambers, in Miami, Florida, on March 29, 2018.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
All counsel of record